

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

WENXIANG KOU,

               Petitioner,

      v.

WARDEN OF THE ADELANTO
ICE PROCESSING CENTER, ET
AL.,

            Respondents.

Case No. 5:26-cv-02923-AJR

**MEMORANDUM DECISION AND
ORDER GRANTING PETITION**

## I.

## INTRODUCTION

On May 28, 2026, Petitioner Wenxiang Kou (A# 240-424-139) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 1-2.) On June 5, 2026, Respondents Warden of the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center, Ernesto Santacruz, Director of the Los Angeles ICE Field Office, Todd Lyons, Acting Director of ICE, Todd Blanche, Acting Attorney General, and Markwayne Mullin,

Secretary of the Department of Homeland Security ("DHS") (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 8.) On June 8, 2026, Petitioner filed a Reply to the Answer (the "Reply"). (Dkt. 9.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 3, 6.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to either provide a prompt bond hearing or release Petitioner.**

## II.

## FACTUAL BACKGROUND

The Petition provides detailed factual allegations. (Dkt. 1 at 5-8.) Respondents largely decline to address or dispute the allegations in the Petition, but Respondents do provide a few additional facts related to Petitioner's re-detention. (Dkt. 8 at 3.) The Court starts by setting forth Petitioner's allegations from the Petition and then sets forth the additional facts provided by Respondents.

Petitioner entered the United States on or about May 9, 2023, without inspection and was apprehended by ICE. (Dkt. 1 at 5.) On or about May 13, 2023, DHS issued Petitioner a Notice to Appear, charging him with removability under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) as an alien present without admission or parole, and placing Petitioner in full removal proceedings before an Immigration Judge. (Id.) On or about May 13, 2023, ICE released Petitioner from custody on his own recognizance pursuant to Section 236 of the INA. (Id.)

Following his release, Petitioner filed an application for asylum. (Id.) Petitioner's asylum application remains pending before the Immigration Court. (Id.) Since his release, Petitioner has made good-faith efforts to comply with all reporting requirements. (Id.) Petitioner has worked to support himself, regularly attended church, participated in volunteer activities with his daughter, studied English at the El Monte-Rosemead Adult School, and lived openly and peacefully in the community.

(Id. at 5-6.)

On or around June 17, 2025, Petitioner was arrested by the Alhambra Police Department for an alleged violation of California Penal Code §273d(a), corporal injury to his daughter.  (Id. at 6.)  On or about June 20, 2025, the Los Angeles County District Attorney charged Petitioner with a violation of California Penal Code §273d(a).  (Id.)  On the same day, the criminal court issued a criminal protective order prohibiting Petitioner from abusing or contacting his daughter.  (Id.)  That criminal case remains pending before the Los Angeles County Superior Court.  (Id.)  On the same day, the Los Angeles County Department of Children and Family Services ("DCFS") filed a juvenile dependency petition concerning Petitioner's daughter.  (Id.)  On or about June 23, 2025, the criminal court set bail and Petitioner was released from criminal custody after posting bail.  (Id.)

On or about August 15, 2025, the Multidisciplinary Assessment Team ("MAT") and Child and Family Team ("CFT") conducted a MAT/CFT Shared Objective Family ("SOF") Meeting and issued a corresponding report.  (Id.)  The report indicated that PEtitioenr's daughter was in good physical health, but required emotional support and expressed a desire to return to her faither and her prior school.  (Id.)  The report further noted that Petitioner had demonstrated a commitment to self-improvement, actively participated in counseling services, and sought to provide a safe and stable home environment for his daughter.  (Id.)  The report also recommended consistent visitation between Petitioner and his daughter, as well as regular communication with the child's mother and grandmother, who currently reside in China.  (Id.)

On or about September 5, 2025, the Dependency Court ordered that Petitioner's daughter remain in suitable placement and directed DCFS to provide family reunification services to Petitioner and his daughter.  (Id.)  The court further ordered Petitioner to enroll in parenting classes and permitted monitored visitation three times per week, pending modification of the protective order.  (Id.)  Following the

Dependency Court visitation order, on or about October 15, 2025, the criminal court modified the protective order to permit visitation between Petitioner and his daughter. (Id. at 6-7.) Since that time, Petitioner has actively participated in reunification services, complied with the parenting plan, and maintained regular visitation with his daughter. (Id. at 7.) On or about March 4, 2026, the Dependency Court ordered Petitioner to continue participating in anger management classes and individual counseling. (Id.) The court further indicated its intention to authorize unmonitored and overnight visitation once the protective order was modified and lifted, and granted DCFS discretion to approve extended visitation upon such modification or lifting of the order. (Id.)

On or about March 25, 2026, ICE officer re-detained Petitioner outside the Alhambra Superior Court, where he had appeared for a hearing in the above-referenced matter. (Id.) Petitioner has remained detained since that date. (Id.) When Petitioner was taken into custody, ICE took Petitioner's personal belongings, including his cellular phone, translation device, and court documents. (Id.) At no time prior to his re-detention was Petitioner notified that his release had been revoked or that he would be re-detained. (Id.) Petitioner was not given any advance notice that he would be taken into custody, nor was he provided with a bond hearing or any opportunity to contest his detention beforehand. (Id.) Additionally, when officers detained him, they did not present or show him any warrant authorizing his detention. (Id.) To date, Respondents have not provided Petitioner with a bond hearing. (Id.)

As set forth above, Respondents largely decline to dispute Petitioner's factual allegations, but do offer a few additional facts. (Dkt. 8 at 3.) Respondents provided a copy of a Record of Deportable/Inadmissible Alien prepared upon Petitioner's re-detention on March 24, 2026. (Dkt. 8-1 at 2-4.) Based on the Record of Deportable/Inadmissible Alien, Respondents state that on November 4, 2024, ICE instructed Petitioner to report to 300 N. Los Angeles St., Los Angels, California, Rm. #B125 (Alternatives to Detention Unit) on November 1, 2025. (Id. at 4.) Petitioner

failed to report and is considered an absconder.  (Id.)  With regard to Petitioner's re-detention by ICE, Respondents state that this occurred on March 24, 2026 (not March 25, 2026 as Petitioner alleges), and that ICE arrested Petitioner pursuant to an immigration detainer.  (Id.)

In his Reply, Petitioner disputes the characterization of Petitioner as an "absconder," but does not otherwise appear to dispute that Petitioner missed the November 1, 2025 check-in with the Alternatives to Detention Unit.  (Dkt. 9 at 2.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief (Count One) is that re-detention without prior notice and a pre-deprivation hearing violated his procedural due process rights.  (Dkt. 1 at 8-11.)  Petitioner's second claim for relief (Count Two) is that his continued detention without providing a bond hearing violates 8 U.S.C. § 1226(a).  (Id. at 11-13.)  Petitioner seeks immediate release from custody and a declaration that his detention violates both the INA and the Due Process Clause of the Fifth Amendment.  (Id. at 13.)  In the alternative, Petitioner seeks a bond hearing before an Immigration Judge within seven days at which the Government bears the burden of establishing by clear and convincing evidence that continued detention is appropriate to prevent his flight or to protect the public.  (Id.)  Petitioner also seeks prospective injunctive relief upon his release that would prohibit Respondents from imposing more restrictive conditions of release or re-detaining Petitioner absent lawful process, including a pre-deprivation hearing.  (Id. at 13-14.)  Petitioner also requests an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA").  (Id. at 14.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property

without due process of law.  See U.S. Const., amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990).  Indeed, the Due Process Clause provides both procedural and substantive protections.  See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)).  To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976).  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also

6

id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, Respondents concede that Petitioner is a member of the Bond Eligible Class certified in Maldonado Bautista v. Santacruz, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), reconsideration granted in part, 2025 WL 3713982 (C.D. Cal. Dec. 18, 2025), and amended and superseded on reconsideration, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). (Dkt. 8 at 2.) On December 18, 2025, the court

in Maldonado Bautista entered final judgment and granted declaratory relief to all members of the Bond Eligible Class. See Bautista v. Santacruz, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025), judgment entered sub nom. Maldonado Bautista v. Noem, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025). Pursuant to the final judgment entered in Maldonado Bautista, "the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a), are not subject to mandatory detention under § 1225(b)(2), and are entitled to consideration for release on bond by immigration officers and, if not released, a custody redetermination hearing before an immigration judge." Maldonado Bautista v. Noem, 2025 WL 3678485, at *1 (C.D. Cal. Dec. 18, 2025). On March 6, 2026, the Ninth Circuit administratively stayed the December 18, 2025 declaratory judgment in Maldonado Bautista "insofar as [it] extends beyond the Central District of California" pending a ruling on the Government's motion for a stay pending appeal. Maldonado Bautista v. Dep't of Homeland Sec., No. 26-1044, Dkt. 5 at 1 (9th Cir. Mar. 6, 2026). Thus, the December 18, 2025 declaratory judgment remains effective and enforceable within the Central District of California.

Accordingly, the Court concludes that Petitioner is detained pursuant to 8 U.S.C. § 1226(a) and is not subject to mandatory detention under § 1225(b)(2). See Maldonado Bautista, 2025 WL 3678485, at *1. Moreover, Petitioner is entitled to an individualized bond hearing pursuant to 8 U.S.C. § 1226(a). See id. Thus, the question is whether Petitioner is also entitled to immediate release and if not, the appropriate standard to apply at Petitioner's bond hearing.

It is undisputed that Petitioner was released from immigration custody on or about May 13, 2023, on his own recognizance pursuant to Section 236 of the INA. (Dkt. 1 at 5.) It is further undisputed that Petitioner's "re-detention was triggered by his June 2025 arrest under California Penal Code § 273d(a)." (Dkt. 9 at 3; see also Dkt. 8-1 at 4.) It is also undisputed that Petitioner failed to appear for a November 1, 2025 check-in with the Alternatives to Detention Unit. (Dkt. 8-1 at 4.) Thus, it appears that immigration authorities had a lawful basis to revoke Petitioner's release

8

on his own recognizance under 8 U.S.C. § 1226(b). Indeed, 8 U.S.C. § 1226(b) authorizes the Attorney General to revoke bond or parole authorized for immigrants like Petitioner who are released under Section 1226(a). The Ninth Circuit has recognized that DHS's discretion to revoke bond or parole under Section 1226(b) is constrained "absent changed circumstances" such as "reinvolvement with the criminal justice system." Panosyan v. Mayorkas, 854 F. App'x 787, 787 (9th Cir. 2021) (internal quotation marks omitted) (citing Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981)). Thus, the Court concludes that immediate release from custody would be inappropriate here and instead the proper remedy to protect Petitioner's due process rights is a prompt bond hearing.

The Court now turns to the appropriate legal standard that will govern the bond hearing. To determine the appropriate legal standard, it is necessary to analyze Petitioner's liberty interest in remaining out of custody. As set forth above, it is undisputed that Petitioner was released from immigration custody on or about May 13, 2023, on his own recognizance pursuant to Section 236 of the INA. (Dkt. 1 at 5.) Thus, the Court concludes that once Petitioner was released from custody on his own recognizance, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

When balancing the <u>Matthews</u> factors in light of Petitioner's liberty interest in remaining out of custody, the Court concludes that due process requires the Government to bear the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community.  <u>See, e.g.</u>, <u>Ixchop Perez v. McAleenan</u>, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)), <u>appeal dismissed sub nom.</u> <u>Perez v. McAleenan</u>, 2020 WL 8970669 (9th Cir. Dec. 4, 2020); <u>Carballo v. Andrews</u>, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the <u>Mathews</u> factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").[1]  Accordingly, the Court will direct Respondents to bear the burden of proof consistent with the foregoing standard required to satisfy due process.

Finally, the Court notes that Petitioner also requested an award of reasonable attorneys' fees under the EAJA.  (Dkt. 1 at 14.)  The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action.  <u>See</u> <u>Rahimi v. Semaia</u>, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

---

[1] The risk of erroneous deprivation is high because Petitioner has not received any bond hearing and the Government's interest in detaining Petitioner without a bond hearing is very low because a bond hearing is routine and can be easily provided.  <u>See</u> <u>Carballo</u>, 2025 WL 2381464, at *7-8.

10

# VI.

# CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall either provide Petitioner Wenxiang Kou (A# 240-424-139) ("Petitioner") an individualized bond hearing before a neutral Immigration Judge within seven (7) days or release Petitioner if such hearing is not timely provided. At the bond hearing, the Government must bear the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents must provide adequate notice to Petitioner and his counsel so that counsel can be present and prepared for the bond hearing. If Petitioner or his counsel would like more time to prepare before the bond hearing occurs, Respondents shall permit the extra time and may provide the bond hearing after the 7-day deadline if the delay is at the request of Petitioner or his counsel. Respondents shall file a notice of compliance no later than **three days after the bond hearing occurs**.

IT IS SO ORDERED.

DATED:   June 11, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

11